Judge Johnstone and I would first like to thank Judge Simon from the District of Oregon. He has a very full caseload in Oregon and he has very kindly and generously agreed to take on a lot of additional cases to help us out here at the circuit. We're really grateful to him and to his law clerks and just say what a joy it's been to sit with you this week and we hope you come back. We also want to thank all of you for being here today. We welcome you to the Ninth Circuit and are very pleased that you're here with us in San Francisco. So with that, there are a number of cases that have been submitted on the briefs and record and will not be argued today. They are Hernandez-Solorzano v. Garland, Kuhl v. Garland, Baines v. Garland, Medrano de Martinez v. Garland, and Diaz v. O'Malley. So all of those cases are submitted and we have argument in one case. And if counsel would please come forward and let us know how much time you would like for your rebuttal. Good morning, Matthew Schwartz for the appellant. With the court's permission, I'll reserve three minutes for rebuttal. That's fine. Go ahead, please. Thank you. Good morning and may it please the court. Could you adjust the microphone as well, please? Is this better? That's much better. Thank you. Good morning and may it please the court. For more than 40 years, Tangle has held registered copyrights for its famous Tangle sculpture and its derivatives. In creating the copyrighted pieces, the sculptor made numerous artistic choices, which together comprise a fixed, tangible, three-dimensional, kinetic sculpture that represents movement and infinity. The defendant's pieces reflect exactly the same choices and are unmistakably copies of the original. Is there anything in the seven copyrights that are at issue that indicates that Tangle has copyright protection or plans to assert copyright protection over all possible poses rather than the particular pose depicted in a copyright? So, I think, Judge Simon, you've put your finger on exactly what the error is here, the fundamental error in the district court's analysis that infected everything else. The thing that is copyrighted is not the pictures. The thing that is copyrighted is the physical, tangible, three-dimensional, kinetic sculpture which is capable of movement. The district court ignored all of the artistic choices the sculptor had made and reduced the work to specific photographs of a 90 degree curved tubular structure. And as a result of that oversimplification, the court even held that Tangle had not alleged valid copyrights. That's something that they don't even demand. The district court, at its core, really said that what Tangle has here is an unprotectable idea, not protectable expression. To assess whether that was correct or incorrect, how does one distinguish an unprotectable idea from a protectable expression? This is the trick in the art of copyright law, and this is, by the way, why questions like this are not typically resolved at the pleading stage. An application of the extrinsic test, although it is ultimately a question of law for the court, is not typically resolved at the pleadings. I think actually Judge Koh's decision in the zombie case, the AMC network case in the district court talks about the Ninth Circuit's case law, suggesting that to understand what is protected requires analytical dissection of the copyrighted work and expert opinion. That decision is at 2019 Westlaw 402-3600. And I guess the court has told us that in order to get up to expression, original expression, that's often a pretty low bar. But I guess in starting with the use of the photos, so you identify in your brief six, seven maybe different distinguishing aspects of the element that add up to the work. And I think you can see that any one of them taken alone, or even a couple of them taken alone, would not themselves be copyrightable, it's a combination. Well, it is fact intensive. So I would agree with you that one of them taken alone is almost certainly- Right, I'm not going to take you down the slippery slope, because you have six or seven, but I guess my question is both in neither, let's start with the registration process. That's registrations there to provide notice to people of the scope of your claim in the work, are those elements, those seven, that combination, that arrangement, that selection of those seven different aspects apparent in the photos that you use? I think that they are, and more importantly again, the thing that is copyrighted is the sculpture itself. So this is not like a patent case where all the specifications have to be laid out. The thing is entitled to copyright protection by virtue of existing in the universe, even separate and apart from registration. The registration simply protects it for enforceability. It's not necessary that the registration enumerate the things that make it uniquely artistic. Take for example- What about the complaint? You don't provide that enumeration. I was unable, in paragraph 43, you get into it, and I certainly appreciate having read some very long complaints, your points about a concise statement of your allegations, but that list that's in your reply brief and your opening brief isn't in the complaint. I agree with you that the complaint also does not enumerate each and every artistic choice that went into the creation of the Tangle sculpture, and I'll answer your question, but I actually would like to get into what those artistic choices were. But the complaint, so you point out paragraph 43, which points out some of the specific choices that were copied in the infringing works, but the critical thing is that the complaint attaches and incorporates the copyright itself, and the copyright is what we are seeking to enforce and what puts them on notice. There's no question that, at least at the pleading stage, that the defendants here were on notice of the Tangle sculpture and the Tangle copyright. We allege, for example, that in their internal videos for how to assemble the thing, they use the tagline that is lifted directly from Tangle's promotional materials. Do you believe that the copyright protects all colors? I believe that the color is not part of the copyright, and so any color variation would be a derivative work. Again, we get into at what point points of difference. The color pink is not protectable. You agree with that? The district court found that. You agree with that finding, it sounds like. It's not part of the copyright. It's part of the trade. Okay. That's correct. And the chrome also, chrome versus matte, that's not protectable. You agree with that? That is not part of the copyright. Okay. Sculptures made of interlocking pieces. You agree with that or disagree with that one? I agree with that. So let me...  So then you also agree with 90-degree curved tubular pieces. That's also unprotectable. No, no. I'm sorry. I didn't agree that the other thing was unprotectable either. Okay, I'm sorry. I just want to understand what you think is protectable elements and what are unprotected elements of your copyright. So color, pink, chrome, not protected, but sculptures made of interlocking pieces. You think that is a protected element of your copyright or not? What is protected is the combination of choices that the artist has made here. So I appreciate what the court is trying to do, which is the filtering out test that this court has talked about. But when we talk about a work of art, even though every particular element may be by itself unprotectable, the combination of them, the artist's choice to select a combination of them is protectable. This is the Nike case from this court. Then you sound like you're agreeing with the district judge. The district judge found the selection, coordination, and arrangement of the 90-degree curved tubular sculptures was the protected element. But now it sounds like you're saying... It's more than that. It's more than that. So the idea here, which is not protectable, of course, is a 3D sculpture reflecting movement and infinity. The choices that the artist has made in order to turn that idea into the specific copyrighted Tangle sculpture include, among other things, number one, having 17 or 18 segments. Number two, each segment is identical to one another. I'm aware of the list. You have it in your briefs, and time is short. So I guess, how would you have the district court or us perform the filtering test, the filtering under the extrinsic test, so that we can ensure that we're not leading the district court on a road to copywriting, to protection for unprotectable elements? How should that work? We have the Nike case. What filters out if it's not... We have to take them all together, but then we also have to look at them one by one. I'm just not sure how that's supposed to work, really, for either side. I agree with you, and I think it is both difficult and confusing. But what the court held in Riefmeester, the Nike case, was where you have a composition, in that case a photograph, where every artistic choice by itself is unprotectable, but together it turns into something protectable. It's entitled to broad protection, and the filtering out process doesn't really work that way. And you go to the substantial similarity test, looking at whether the combination of choices the infringing product has made and the combination of choices the copyrighted artist has made are substantially similar. How does that factor in the movability or malleability of this? Because if you want to look at all of the various choices that the artist made, well, then you have a particular image that we see in the two-dimensional copyright photograph. But where does it say that all of the other possible expressions of that image are also entitled to receive copyright protection? It's not that all expressions are entitled to copyright protection. It's that the thing itself, which is movable, is entitled to copyright protection. So you mentioned patent earlier. Is the thing itself patented? And I assume not. If not, is it patentable? There may be certain aspects that are patentable, and in this case were, in fact, patented. The patent has since expired. But they go to the functional, not the artistic elements. That's what copyright is for, and this is fundamentally a work of fine art. How did the patent differ at all from the specification of the seven elements here? Of course, the record doesn't reflect this, and I'm not... Well, and of course, you see our concern is the copyright statute. Congress has told us that we need to make sure we can tell the difference between the two, and we can't patent. We can't copyright things that patents are reserved for. Right. I mean, this court has held that the two are not mutually exclusive, but I believe, and we can certainly supplement the record if it would be helpful to the court, that the patent did not enumerate all the artistic choices that I've talked about, and simply focused on the functional mechanics of the device. Which of the elements are, you know, that it's joint, that it's 18 pieces, that there's 360 degree range of motion? Those strike me as things that I would not be surprised to see in a patent. I don't think so, but I don't want to get beyond what I know, Your Honor. What is your trade dress? Is it the pink chrome color? Is it the size? Is it the configuration? It is the, and this is alleged in paragraph 12, I believe, it is the product itself plus the pink chrome. So it is the copyrightable choices plus the pink chrome. You know, let me ask you this, because in your trade dress claim, which was asserted for the first time in the second amended complaint, the judge threw it out, but then gave you leave to replead. You then filed a notice of intent not to amend, and in that notice, Tangle said plaintiff contends that amendment would be futile. Why would amendment be futile to further describe the trade dress claim? I think given the district court's reasoning on the copyright claim, although we could have further enumerated the trade dress, it would have then run headlong into all the court's holdings on copyright, which is to say that there's nothing protectable about the trade dress for the same reasons as the copyright. That error is going to end up in fact. But can't things that are not copyrightable be nevertheless protectable under trade dress law? In theory, yes. So why couldn't you replead to satisfy the district court's trade dress concerns and give better notice, more specific notice there, even if it might have not satisfied him on copyright questions? I think, and I'm mindful that I'm in rebuttal time, so I don't want to lose that opportunity. I think that we could have amended to cure some of the notice problems that the district court identified, but that that pleading would have, based on the district court's erroneous reasoning on the copyright claim, inevitably failed. And that procedure, this court endorsed in Edwards. In that case, the RICO claim was the main claim, even though there were other claims that could have been amended. The court said it was okay. In paragraph 12, all you say is Tangle's distinctive pink chrome trade dress. That's it. I think we say in combination with the other artistic choices. No, you don't. You want me to quote it? As shown in the social media exchange above, Tangle's distinctive pink chrome trade dress is famous and recognized by consumers. The following images are examples. They currently offer genuine Tangle products in pink chrome. And then there are images of the products that reflect all the choices in the copyright. I mean, at base, just taking a step back for a second. Well, if it was a patent case, you couldn't say, okay, here are some products. You figure out whether this is an embodiment or not. True. You couldn't do that. I could not do that. Yes. And I don't think you can do that in trade dress either. I think it is certainly true that we could have more specifically identified the constituent elements of the trade dress. But for pleading purposes, we identified the pink chrome. We show images of the product. This is a case where the product itself is the trade dress. It's all of the artistic choices in the product. And this court has endorsed trade dress where the trade dress is the product itself. You then get into a complicated discussion of what's functional versus non-functional. But the court has endorsed that approach. And I would suggest it's appropriate here. I now have eaten into my... I'll give you a couple of minutes for rebuttal. Okay. Thank you very much. Anything further from my colleagues? No. Okay. Thank you. We'll give you two minutes for rebuttal. Thank you. May it please the court. Richard Seibert from Gordon and Reese for the Apelli Aritzia. I'd like to respond first to one of the questions that your honors just put to appellant's counsel. And that is, could these designs be patented? And the answer is, yes. They would qualify for a design patent. But just like the copyrights here, only for the specific design. Just as the copyright only protects the specific configuration. Is your argument, Mr. Seibert, that the... I guess, how do we deal with the fact that this is... The work is dynamic and is supposed to be dealing... Is capable of being made into different poses. Is your argument that only the specific poses in the copyright registry can be at issue, if anything can be copyrightable? Yes. Because the movement in this case is not a work of authorship. It is not the result of the composer as in a dance choreography. Well, not the movement, but I guess... So let's take the seven elements here that your friend is arguing are selected and arranged to provide a copyrightable work. That it's tubular, closed in a torus shape, which is a specific form of macaroni type shape. 17 to 18 pieces, uniform joined, each of them turning 360 degrees. And your client's use includes all of those elements, right? It does. So do we have any other case where you could describe a work as containing six or seven identical elements? I mean, down to the 17 or 18 pieces is what your client shipped out to its stores. That have been arranged in a particular way. Not arranged in terms of pose, but arranged in terms of combination selected for those elements. That have satisfied the extrinsic test? Well, those are the elements that must be filtered out. You cannot, for example, you cannot copyright geometric shapes. There's a slew of... Okay, but a basketball held by Michael Jordan in the air is a geometric shape. But once it's in his hand and he's doing the splits and it's, you know, moving towards a... Right, that's what we've warned against in terms... We can't allow the filtering at the pleading stage to consume the selection and arrangement criterion that ultimately produces the work. And the particular pose of Michael Jordan doing the splits, holding the basketball in just that way would be copyrightable. But putting the questions of personality and rights of celebrities to the side... But the pose is just one of the elements. Here, they're not claiming the pose. You're arguing that they can only claim the pose. But there are these seven elements that if you had to write a description of the works that you, your client showed, and the works that Tangle makes, I'm not sure how you could write a paragraph describing both of them other than scale and where they are displayed that would be different in any way. Well, this comes back full circle, Your Honor, because it's not a patent. You don't set forth the specifications in a copyright. You make a deposit in the Library of Congress and that deposit identifies what is copyrighted. Now, there is... So it's impossible to copyright things that move. That would take the Calder sculpture or the Chicago Garden out. I believe the holding of the Kelly case was that the Calder mobile was sufficiently fixed so that it was copyrightable. They did not hold that the movement itself was copyrightable. But the pieces are constantly in motion. So why doesn't that stand for the proposition that it doesn't have to be a specific frozen configuration, that it can have movable pieces? In the Kelly case, they were actually referring to the Calder mobile in the negative, in the sense that they held a garden didn't qualify for copyright protection. But your claim is that the word fixed in copyright law requires that it can't move? No, it can move, but whatever it moves to, you have to file a separate copyright for that particular pose. There's no case I know that holds you can copyright the movement itself. But what about... Okay, but we've got cases that involve music, photos, all sorts of things that we try to break down and maybe filter out appropriately the elements. And what we're understanding, not in the way of a patent specification, what we're trying to understand is does the selection and arrangement of those elements, I don't think necessarily in a pose, but does that provide a copyrightable work that is substantially similar to the allegedly infringing use? If I may, Your Honor, let me give you an example or a hypothetical. You could have a video of a child playing with one of these tangled toys. I've got a bunch right here. You could have a video of the child changing the shape and moving it. Okay, but what about if a child's playing with a doll? We've held that dolls that move, and your friend has cited cases involving Lego minifigures, that those move, and they move in particular ways with particular joints arranged in particular ways. So it can't be that the mere fact that the work itself can be manipulated defeats the claim. I'm sorry, I couldn't quite hear what you said. I mean, are you contending that if the exact poses aren't specified, the mere fact that the work can be manipulated defeats copyrightability? I'm saying that when you copyright something, you have to copyright the particular configuration. You cannot copyright the movement unless it's... Well, no one's asking that the movement itself be copyrighted, but it's the expression of various pieces put together that are movable. Oh, sure. Right? It's like the Lego. You can move the head. You can move the arms, right? And no one is saying copyright the movement itself. It's just the expression of putting these particular items together that are movable. That's correct, but what was copyrighted in Lego was the particular sculpture, the expression on the face, the shape of the heads. You cannot do that in the context of these sculptures because they're unprotectable elements. Geometric shapes are not protected. The head is a cylinder. The body is a trapezoid. Or maybe I'm thinking of the wrong minifigures here. But I don't think it just turned on the fact that there are little faces drawn on them or that there are hard hats. It was that there's a particular kind of distinctive shape. Sure. It was the bullet form of the head, for example. You are correct, but in the context of these sculptures, Judge White across the bay found that the geometric shapes, the 90-degree angle, the similar axis- But in the Lego example, you wouldn't require Lego to get a copyright with the left arm up, a copyright with the right arm up, a copyright with the head twisted to the left. You wouldn't require that level of minutiae in terms of copywriting every single pose, correct? No, but would- That is correct. So why would you do that here? These are movable pieces. I'm sorry, forgive me. Go ahead, please. What would be infringed in the Lego case is the particular artistic expression, the recognizability of the Lego figure. It's the sculpture of the figure itself. But does that turn on the fact that it's a person rather than a loop? I think to some degree it does, Your Honor, because- Well, to what degree? Because I guess the concern is if we- Again, we've got seven identical elements that Tangle has identified here that are indistinguishable, even down to the number of pieces in the set in most cases. And I guess the- Take this out of this particular- If we're trying to write a rule here that says you have seven identical elements, sure, no one of which may be protectable, but that are arranged in a distinctive way, we have to worry about music, we have to worry about poetry, we have to worry about some software code. How are we not- How are you not asking us to adopt a rule that allows us to filter out all seven of those elements in combination, in arrangement, in selection, and leave any future copyright owner without a claim? I am not asking you to do that, Your Honor. What I am saying is that when you take those seven elements and you combine them in a particular way, the particular way you combine and configure them, that is copyrightable. And what is- Help me in terms of what's the- In terms of a case or what is distinctive about that way? Because of course, once we get to kind of that way, it seems like we're leaving the extrinsic test and entering in the world of maybe jury questions. What's special about that combination of seven elements combined that would be different from a more identical Michael Jordan photo or a Lego figure? Because that is what the author copyrighted. And that is why Tangle filed nine separate copyright registrations for nine separate poses. But that's fact. I think Judge Coe's concerned that you're now only talking about specific poses rather than the way in which the elements themselves can be manipulated. That's right. Movement itself cannot be copyrighted unless it's fixed by the author in the context of, for example, dance choreography, which is trying to compare apples to oranges. If we take one of these copyrighted poses and move it just slightly, just one of the pieces slightly, does that raise the possibility of substantial infringement? I think it, hypothetically, I think it would raise the possibility of substantial similarity or in this case, because Judge White properly found that the copyright protection is thin, virtual identity. It's a question of degree. How much are you going to move it? And I didn't see, how could it possibly be entitled to only thin protection given that I really do think, and I didn't do the math on this, but there's probably tens of thousands of different poses that can be made? Because I think the vast majority of those poses are inconsequential variations. Some of them might not even be apparent to the naked eye. Judge White found that there are simply only so many ways that you can manipulate these figures in the context of 90-degree angles and the similar axes, and that's analogous to findings that this court has made in, for example, Mattel, the Bratz case, the Sky Vodka case. I want to get back to a fundamental point that I asked your friend. The court below found that the plaintiff's designs and copyrights were only of an idea, not an expression. How do we properly distinguish? I've not seen any case law that articulates, in a way that I can understand, the difference between an idea that is unprotectable and an expression that is. Can you give me something? Sure, and maybe the best way to do it is simply by example. Cubism is an idea. George Brock was the first artist to explore it. He can't- Now turn this into an articulable rule, please. I get the examples. I did the same thing myself with Modrian and Picasso and Jeffrey Gibson. I get all that, but I can't articulate a rule yet. I would suggest that the articulatable, if that's a word, rule is that it is the particularized expression of an idea that you can protect, and that is a fundamental concept, not just of copyright law, but throughout intellectual property. So to take the cubist piece, so let's say, I think the counterargument then is that a canvas with a pipe on a table whose legs are, in a particular cubist way, are facing both like 90 degrees one way and 180 degrees the other. Seven different ways where they are identical. And it seems to me that I'd be looking at pretty much the same painting then. I don't think you would be looking at the same painting once you filter out the unprotectable elements. Well, a pipe is unprotectable. A table is unprotectable. I suspect, right, cubism would be the fact that you can view the same figure from multiple different angles is unprotectable. But if it was the same seven things that were portrayed in the picture in a cubist style, why isn't that this case? Well, your implication is correct that you can take multiple unprotectable elements and your particular arrangement of them can then be protectable expression. That's the same rule in patent law. But then that gets to the question of substantial similarity or, in the case of thin copyright protection, virtual identity. You look at it. You perform the test. And that's what judge. And that's a question for the jury, is it not? It is not, your honor. Well, then you're talking about filtering out all seven elements. The extrinsic test is where we're going to slice and dice and take them all away so that they're left with nothing. But if it turns to the selection and the arrangement in a particular way, where we haven't filtered out all those elements and, as we say, we can make copyrightable work with seven completely unprotectable elements, it just strikes that that might be on the intrinsic side. Well, I'd respectfully submit that under this circuit's precedent, principally the Rentmeester case, that it is within the province of the court when it has the copyright registration and the accused item in front of it to perform the extrinsic test. And that is not taking anything away from the jury. You don't get to the subjective test. You don't get to the intrinsic assessment if you can't get past that first hurdle. And in this case, you can. You got the same thing here from my worthy opponent that Judge White got across the bay. They were asked repeatedly, what is the protectable expression? What are you claiming here? What's copyrighted? And all Judge White got, and all you got here, was a tautological circular argument, well, it's the sculpture. No pun intended. No pun intended. I want to. No, go ahead, please. Do you think Judge White ruled on the fixation requirement? And if so, how do you think that fit into his overall analysis? I don't think he did, but I know I'm well over my time. But if I could just briefly comment. You think it didn't fit into his analysis at all? I don't recall that that's what he focused on. But the fixation requirement, well, no, he did, because he said it has to be fixed in the particular configuration. He looked at originally the nine registrations and then ultimately the seven registrations in front of him. And that's the proper analysis. I would like to ask one trade dress question, and that is if we conclude, and I'm trying to understand the scope of the Edwards decision, if we conclude that it would not have been futile to replead the trade dress claim, which was only alleged for the first time in the Second Amendment complaint. What would what, if anything, would be the legal consequence of that? Or should a plaintiff always just be entitled, even if amendment would not be futile, to simply say, I decline amendment. I think you got it wrong, District Court. I'll take that up on appeal. I think that were you to so rule that the that tangled the appellant here, the plaintiff below would have the same opportunity that Judge White gave them to reallege if they could. But that begs a more, I think, a more significant question, which is, could you allege consistent with the pleading requirements, consistent with Rule 11? Could you allege the required elements of trade dress, non-functionality, inherent distinctiveness, secondary meaning? On the facts of this case, as an attorney, I'd have severe reservations about whether I could do so. But if you look at that comparison that they have at the beginning of their opening brief, it is pretty strikingly similar, isn't it? I don't think it's strikingly similar. Well, what if I tell you it is to me? OK. So what's your thinking? I would respectfully respond that what you are seeing as strikingly similar is a style the same way as a Claude Monet Impressionist painting and a Camille Pissarro Impressionist painting. They're both gauzy pastels, garden scenes. They look strikingly similar. Different artists, they could each get their own copyright on it. It's a style. It's not a configuration. It's not fixed. Style is not fixed. Movement is not fixed. Is there a fixation requirement in trade dress, though? It just is, you know, likelihood of confusion to the consumer, right? Oh, I'm sorry. No, in trade dress, there is none. No. But the requirements to establish trade dress, protectable trade dress in the first place, are fairly exacting. And none of the elements were adequate. I don't recall a fixed style, fixed movement requirement in trade dress, right? It's likelihood of confusion to the consumer. That's correct. It's a subvariant of trademarks. So then back to my point, then, if Tangle could have repled a trade dress claim, should there be any legal consequence from their having declined that opportunity? Sure. Waiver. And how is that consistent with Edwards? I can't answer that off the top of my head. Fair enough. All right. Any further questions? OK, thank you very much. So my 10 pages of prepared argument just gone. Thank you. Thank you. I have the toys here, by the way, if you want to see them. No, thank you. Go ahead, please. Thank you. Going first to the fixation requirement and the movement inherent in these pieces. First of all, there's no question that fixation was part of the district court's analysis. It's on page seven of the order. He essentially holds that a piece must be unmovable in order to be protected by copyright. And you can only protect certain poses. That is obviously incorrect. Fixation means that something is tangible and not ephemeral, but not that it's not capable of movement. You all looked at the examples of the Lego figurines or the Bratz dolls. No question that those things are subject to copyright. And it's not that you need a separate copyright for every arm position or head position, which would not just be up or down, but it would be, you know, thousands and really an infinite. Do you agree with your friend that the Tangle sculptures could qualify for a design patent? I don't know the answer to that. OK, let me ask a different question. If I were to throw basically some scatter paint and drippings on a canvas Jackson Pollock style and the Jackson Pollock estate would be suing me for copyright infringement, my defense would be, well, that's just a style. It's not an idea. Sorry, it's just a style. It's not an expression. And mine would look very different. I'm positive. How do we analyze? How would we analyze that problem? Well, I think unless it was quite stark, it might well be a factual question. For example, if you set out to create a faithful reproduction of a Jackson Pollock. No, no, no. I just want to use that. I just want to throw some drippings and scattering and some basically action paint on this. I'm not trying to copy any of his actual paintings, but I am deliberately trying to copy his style. I think it's OK to copy his style. Right. How do we then articulate that when his when the plaintiff who's suing me would say, no, that that's more than just style. You've copied his copyrightable expression. And how do you deal with that? It might well come down to a factual question. I mean, my friend made a concession in response to your question, which I think with respect is determinative. He said, Your Honor asked, if you have this pose in a picture and they move it just slightly and he said, well, yes, that would raise a question of fact as to substantial similarity. And so now we're in facts land. We're in the question of what degree of difference in the pose is substantial similarity or not substantial similarity. That is the province of, you know, at least discovery, if not the jury. Here, Judge Johnson, to your point, we have an allegation that the defendant's products faithfully reproduced every single important artistic decision that the creator has made here. And the only points of distinguishment really are size, are size and scale. It's proportionally the same, but just the size. So it's like if you took my photograph and just blow it up five times, you would never have an argument that that is not as a matter of law on the pleadings substantially similar, but it's on the pleadings. Did you have to plead all six or seven of those? And did you? I don't think so. Again, I don't I don't think it is necessary at the pleading stage to enumerate all of the artistic decisions. This again goes to Judge Koh's decision in AMC. That is especially in matters of art, quintessentially a question of fact that requires analysis of the protectable design and often expert opinion. And I think it's very dangerous to look at a pleading, especially when we're talking about something that is both three dimensional and movable, and say, I can look at pictures and decide on the pleadings as a matter of law that there is no possible way that these two things are substantially similar. That was with respect. Aaron, let me just say one final point on that. There is a suggestion in my friend's brief at page 23 that some deference is owed to the district court's opinion. They cite a decision suggesting the decision should be reviewed for for a clear error in the cases. Yanush, those cases, and I'm sure he would tell you as a mistake. Those cases deal with dismissal as a rule 16 F sanction, which are reviewed for abuse of discretion. The district court's decision here is not deserving of any deference. This court reviews it de novo. And when you look at the allegations in the complaint, when you look at the undisputed registered copyright that has existed for more than 40 years and, by the way, has never been used abusively to shut down every potential iteration of sculptures involving geometric shapes, what you have are infringing products that are essentially scaled up knockoffs of the copyright product that at the pleading stage is more than sufficient. Let me ask one more question, if I may. I know the Kelly case about gardens. I know the Mattel case about Lego. I know the Transformer case. What do you think is the most analogous precedent anywhere in the country about the movability issue that we're struggling with? Well, again, with respect, I don't know. It's something that you need to struggle with. There is no dispute that movable sculptures are subject to copyright. The defendants conceded this in the district court. They pointed out that the copyright office has registered more than 10,000 kinetic sculptures. So the fact that movability does not plainly defeat copyrightability. But if you want to ask me for the best cases on that, there aren't a lot that discuss that specifically. Certainly, the Kelly case distinguishes movement that matters, movement that doesn't matter. And you have the example of a Calder sculpture where the movement is part of the design and still copyrightable. You have the doll cases, whether it's Lego in Connecticut or the Bratz case, the Mattel case here in the Ninth Circuit, where you have products that are capable of movement. And no one would ever say that the fact that they can move renders them unprotected. And their argument, at least as presented here, goes further, which suggests not just movement, but just orientation would make a difference to copyrightability. That's that is not correct. The thing that is copyrighted is a specific object where the object is capable of movement. And that is one of the artistic choices that is entitled to protection, not the fact of movement. No one is trying to copyright movement. We are copywriting and we did copyright a three-dimensional kinetic sculpture that reflects at least six or seven. I could have given you nine separate choices that the artist has made that together comprise a representation of movement and infinity. As you point out, you could pose that particular sculpture thousands and thousands of ways. And in fact, you could depict even through geometric shapes, movement and infinity hundreds of thousands of ways. There's no case that holds abstract art. Depicting a concept like this is entitled to thin protection. That was inappropriate. This is a work of art. It has persisted for 40 years. The defendants products are knockoffs that at least has to be sufficient at the pleading stage. We're not asking for a broad ruling. All this court needs to decide is that the registrations of copyright attached to the complaint are, as alleged, valid. And there is a sufficient question on the pleadings as to substantial similarity that a motion to dismiss not be granted. Everything else, again, to the AMC Network's decisions point can be the subject of factual development, analysis and expert opinion. Thank you. Thank you both for your very helpful arguments today. We are adjourned.
judges: KOH, JOHNSTONE, Simon